*Tagged opinion*



**ORDERED in the Southern District of Florida on October 19, 2016.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                   Case No. 10-23140-BKC-LMI

CHRISTINE E. SANCHEZ                      Chapter 13

　　　　　　Debtor.
_____/

### <u>ORDER ON TRUSTEE'S MOTION TO MODIFY OR DISMISS</u>

This matter came before me on July 27, 2016,[1] on the Motion of the Chapter 13 Trustee

to Modify or Dismiss this Chapter 13 bankruptcy case (the "Motion to Dismiss") (ECF #99).

Having considered the evidence presented as well as argument of counsel[2], both at the hearing

and in legal memoranda presented both prior and subsequent to the evidentiary hearing,[3] I have

determined that I will deny the motion to dismiss and the motion to modify.  However, the

Debtor's discharge will be delayed pending the Debtor's payment of a sanction to the Clerk of

---

[1] The issues addressed in this order also appeared in *In re Sandin*, Case No. 11-45515.  The *Sandin*  case was set for evidentiary hearing on September 29, 2016; however the Trustee and the debtor settled prior to the trial.

[2] The following constitute my findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

[3] Debtor's Response to Trustee's Motion to Modify or Dismiss Case (ECF #101); Debtor's Supplemental Response to Trustee's Motion to Modify or Dismiss Case (ECF #127).

Court for failing to comply with her obligations under her confirmed bankruptcy plan, and

resolution of a separate issue regarding the Debtor's failure to disclose her husband's income on

her bankruptcy schedules.[4]

The disputes between the Debtor, Christine Sanchez and Nancy Neidich, the Chapter 13

Trustee (the "Trustee"), revolve around what should be the consequences of a debtor's failure to

comply with a plan requirement that tax returns be turned over to the Trustee annually when

filed.  The Trustee argues the consequence should be modification of the Debtor's Second

Modified Plan (the "2MP") which is the last confirmed chapter 13 plan, or dismissal of the

Debtor's bankruptcy case because the Debtor breached the 2MP.  The Debtor counters that the

Debtor's failure to provide the tax returns would not have resulted in plan modification so there

should be no consequence for the failure to comply.[5]

For the reasons more fully outlined below, I find that the failure to comply with a plan

term may result in dismissal in certain circumstances not present here, but that the failure to

comply with a plan term is never free of consequence.

---

[4] I reserve jurisdiction to determine whether and to what extent there should be any consequence, including denial of the Debtor's discharge, due to the Debtor's failure to disclose her husband's income.

[5] While the Debtor and the Trustee listed disputed issues of law in their Joint Pretrial Stipulation (ECF #116) at trial and in post-trial memoranda the parties focused on whether the case should be dismissed based on a material default. I will address that issue first and then address the issues raised in the Joint Stipulation.  The Joint Stipulation identified the following disputed issues of law to be resolved:

A) Whether the order of reinstatement must be vacated and the case dismissed as the reinstatement was predicated on the debtor's representation that a plan paying 100% of the allowed unsecured creditors would be filed.

B) Whether the debtor is bound to propose a plan paying 100% to the allowed unsecured creditors as the case was reinstated upon the understanding that the debtor's plan would pay 100% to the allowed unsecured creditors.

C) Whether the debtor must provide the Trustee with the evidence and calculation of expenses contemporaneously with the filing of the amended Schedules.

D) Whether it is bad faith for the debtor to wait until after the case has been pending for 60 months to file amended Schedules to reinstate her case.

E) Whether the Bankruptcy Code requires modification of a bankruptcy plan due to increased income.

The Debtor filed bankruptcy on May 13, 2010.  Her initial confirmed Chapter 13 Plan, her Second Amended Plan (the "first Confirmed Plan") (ECF #49), was confirmed on December 28, 2010.  The 2MP was confirmed on June 22, 2012.  Both the first Confirmed Plan and the 2MP include the following income verification language ("IVL"):

> SPECIAL PROVISION: Pursuant to Section 521 (f)(1), the Debtor(s) shall provide a copy of each federal income tax return to the Chapter 13 Trustee required under applicable law, with respect to each tax year of the Debtor ending while the case is pending under such chapter.

The Debtor never complied with the IVL and on August 26, 2015, the Trustee filed a Motion to Dismiss (ECF #80) due to the Debtor's failure to provide the tax returns (the "First Motion to Dismiss").  Although, in response, the Debtor's counsel filed all the missing tax returns, the case was ultimately dismissed on November 17, 2015, because the Debtor's counsel failed to file promised amended CMI forms[6] reflecting the calculations to show whether the marked increase in income reflected on the tax returns reflected increased income sufficient to warrant possible modification of the 2MP.

The Debtor's counsel sought reinstatement acknowledging that the failure to comply was his firm's oversight.[7] The case was reinstated but Debtor's counsel failed to either file a 100% plan or, alternatively, object to claims such that the dispute with the tax returns would become moot.   The one objection to claim filed did not resolve the dispute with the Trustee. Consequently, the Trustee filed this Motion to Dismiss seeking to revoke the reinstatement due to the Debtor's failure to comply with the conditions for the September 2016 reinstatement.

The Trustee argues that the consequence of the Debtor's failure to provide the tax returns should be dismissal because the Debtor is in material default of her plan.  At a minimum, the

---

[6] The CMI form reports the Debtor's currently monthly income, used, in part, to calculate required chapter 13 plan payments.

[7] I dealt separately with the Debtor's counsel's failure to timely act in this and a few other cases.

Trustee argues, the Debtor must modify the 2MP to pay what appears to be increased income to the unsecured creditors.  The Debtor counters that a change in income alone should never be a basis for modifying a plan, and, moreover, even had the tax returns been timely presented, the Debtor's net income did not increase and, therefore, the failure of the Debtor to provide her tax returns timely should not have any consequence.

Material Default

11 U.S.C. §1307(c) provides that any party in interest may seek conversion or dismissal of a chapter 13 case "whichever is in the best interests of creditors and the estate, for cause", which includes, in section 1307(c)(6) "material default by the debtor with respect to a term of a confirmed plan."   When a court finds that a material default has occurred "dismissal or conversion is not automatic, but rather a matter of the Court's discretion." *In re Formaneck*, 534 B.R. 29, 32 (Bankr. D.Col. 2015) (*citations omitted*).

While "material default" is not defined in the Bankruptcy Code, several courts have had the opportunity to consider when a default under a chapter 13 plan warrants dismissal or conversion.  *In re Formaneck*, 534 B.R. at 29 (Debtors in material default because they failed to make monthly payments directly to the mortgage lender as required by the plan – case dismissed); *In re Hoyt-Kieckhaben,* 546 B.R. 868 (Bankr. D. Col. 2016) (same- except case converted at request of debtor); *In re Grant*, 428 B.R. 504 (Bankr. N.D. Ill. 2010) (Debtor in material default for failing to make full monthly payments to the trustee, but never seeking to modify the plan, and therefore failing to pay her unsecured creditors in full, with interest, as required by the plan, within the five years of the plan – case dismissed[8]*); In re Roberts*, 247 B.R. 592 (Bankr. D.R.I. 2000), *aff'd Roberts v. Boyajian,* 279 F.3d 91 (1st Cir. 2002) (Debtor husband

---

[8] The Court also denied the debtor's request to extend the plan period beyond five years to make up the shortfall.

in material default of chapter 13 plan because even though he and his wife made all payments to the trustee that the plan required, debtor husband failed to segregate trust fund taxes resulting in no distribution to unsecured creditors – case dismissed because the five years had passed).

Thus, while no court has clearly defined "material default"[9] it is obvious that in each instance the adjudicating court was concerned that the time to complete the plan has been exhausted and creditors have not received payments to which they are entitled.  This includes non-payment defaults that have financial consequences to the creditors.

Because the five years of the Debtor's plan have long expired, there is no basis to modify the 2MP.[10]  Consequently, should I determine that the Debtor materially defaulted under the 2MP I must consider whether it is appropriate to dismiss the case.  In order to determine whether the Debtor's failure to timely provide tax returns is a material default, I must consider the impact the failure to turn over those returns would have on any payment obligations to the creditors.[11]  Thus I will address the Debtor's assertions that the tax returns do not support an increase in payments to her unsecured creditors because a change in income alone is never grounds for modification and because there was no increase in income that would warrant an increase in payments to the unsecured creditors.

---

[9] *But see in re Jarvis,* 24 B.R. 46 (Bankr. D. Vt. 1982) ("If the Debtors in fact intentionally or negligently failed to comply with the terms of the confirmed Plan the Court would be justified in declaring such conduct a material default").

[10] *But see Germeraad v. Powers*, 826 F.3d 962,968 (7th Cir. 2016) (Stating debtors may cure a default after the 60 months has passed "by paying the difference between the payments called for by the modified plan [for the incorrectly calculated months] and what they actually paid during those months… they would not be payments 'provide[d] for' by the modified plan; rather they would be payments made to cure a default under the modified plan").

[11] The Debtor argued at trial and in the Debtor's Supplemental Response to Trustee's Motion to Modify or Dismiss Case (ECF #127) that the Trustee should have mitigated the damages by requesting a copy of the Debtor's tax return and other relevant income and expense information. I reject this argument; it is not the Trustee's duty to remind the Debtor to comply with her chapter 13 plan. *See In re Roberts*, 247 B.R. at 594 ("[I]t is not the Trustee's duty to remind, monitor or prod debtors to pay post-petition trust fund taxes….so the estoppel argument is rejected.").

<u>Change in income may be a basis for modification of a chapter 13 plan</u>

In the case *In re Nachon-Torres*, 520 B.R. 306  (Bankr. S.D. Fla. 2014) I held that

determination of whether a chapter 13 plan should be modified involves a three step process

> [F]irst, whether the proposed modification fits within the statutory prerequisites;
> second, whether the circumstances giving rise to the proposed modification were
> either unknown or not virtually certain at the time of confirmation; and finally,
> whether the circumstances otherwise warrant modification.

11 U.S.C. §1329 states that the trustee, the debtor, or any holder of an unsecured claim

may seek modification up until the time payments are complete to, among other things, "increase

or reduce payments on claims."  Notwithstanding that, the Debtor argues that 11 U.S.C.

§1325(b) does not apply to modified plans, and that because, a debtor's income calculation is

addressed in section 1325(b), a change in income alone cannot support a request for

modification.  While I recognize there is a split of authority on this issue, both I and, more

importantly, the Eleventh Circuit, have specifically held to the contrary.

In *Whaley v. Tennyson (In re Tennyson)*, 611 F. 3d 873 (11th Cir. 2010) the Eleventh

Circuit considered whether the "applicable commitment period" is temporal or a monetary

multiplier.  In rejecting the "multiplier" line of cases the court noted

> [A]llowing Tennyson to confirm a plan for less than five years would deprive
> unsecured creditors of their full opportunity to recover on their claims from
> Tennyson by way of post confirmation plan modifications. . . For example, if
> Tennyson's projected disposable income were to increase to a positive number in
> years four or five, §1329 would allow unsecured creditors to file for a plan
> modification.

611 F. 3d at 879. *See In re Rhymaun*, 2011 WL 9378787 (Bankr. S.D. Fla. 2011). *Accord*

*Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1246 (11th Cir. 2008) (In holding that a

debtor must amend his schedules to include property acquired post-confirmation in a chapter 13

case the court noted "[i]f [the debtor] loses a stream of income, a debtor likewise can move to

modify his plan to decrease his payments.").

      Thus, I hold that a change in income *may* be the sole basis for modification of a chapter

13 plan.

<u>The Debtor's change in income must either have been unknown or virtually uncertain at the time
of confirmation.</u>

      The confirmation of a chapter 13 plan contemplates that a debtor's income may vary

from the median income reflected in the initial CMI form, and the time to address that

fluctuation is at the time of the confirmation hearing. However, there are circumstances that

would warrant a modification – such as a debtor losing his or her job, or a debtor winning the

lottery, or the debtor earning income well in excess of what the debtor had made historically or

well below what the debtor had earned historically (e.g. a real estate investor who experienced an

unprecedented increase or decrease in real estate investments – such as the 2008 financial crisis

or the real estate boom that preceded it).

      At the time of confirmation of the first Confirmed Plan, the Trustee had the Debtor's

2008 and 2009 tax returns. The Debtor's 2008 tax return showed an income of $98,479.00. The

2009 tax return showed an income of $46,344.00.[12] Thus, at confirmation the Trustee was aware

that there had been a significant swing in the Debtor's income. Nonetheless, other than the IVL,

---

[12] *See* Joint Pretrial Stipulation(ECF #114) and Trustee's Exhibits 2 and 3.

the first Confirmed Plan had no provision that future increases in income would automatically warrant modification.[13]

Moreover, even if the pre-confirmation tax returns had not shown a significant fluctuation in the Debtor's income, the increased income numbers reflected in the Debtor's finally revealed tax returns cannot be viewed in a vacuum.  They must be considered in the context of any allowable expenses incurred at the same time.  Thus, I must also look at the amended CMIs that Debtor's counsel finally, and belatedly, filed, which show that the Debtor's net changes in income were not such that modification would be warranted, which ties into the final consideration for modification of a chapter 13 plan.[14]

Accordingly, I find that even had the Debtor timely turned over her tax returns to the Trustee, and had the Trustee sought modification, I would not have ordered the Debtor to modify the 2MP.  Consequently, the Debtor's failure to timely turn over the tax returns is a default under the 2MP but it is not a material default.[15]

<u>The Debtor is not required to submit an amended CMI with the tax returns unless the Chapter 13 plan explicitly requires the Debtor to do so</u>

The Trustee argues that the Debtor was required to submit an amended CMI with each tax return.  The 2MP had no such requirement.  In the absence of such a requirement the Debtor

---

[13] The Trustee has argued that the very purpose of the IVL was to allow the Trustee to seek a modification upon a change in income, and that the IVL was inserted in the 2MP (and other chapter 13 plans where the Trustee is uncertain as to income fluctuations) in lieu of a trial on the projected disposable income calculations.  Indeed, in *In re Nachon-Torres*, I noted in footnote 14 that I was not addressing "contractually agreed-to triggers for modification". 520 B.R. 306, 311.  I cited the IVL as an example, explaining that by use of the IVL "the chapter 13 trustee reserves the right to seek modification of payments if the debtor's tax returns show a certain increase in salary."  *Id.* However, in the absence of more precise parameters, I find that the IVL does not alter the Trustee's burden to demonstrate that the change in salary (or other earned income) was either unknown or virtually uncertain at the time of confirmation of the 2MP.

[14] I recognize that the Joint Pretrial Stipulation identifies as disputed the deductions the Trustee asserts were improperly charged against the increased income but virtually no time was spent on this at trial and no evidence presented that would counter the amended CMIs submitted.

[15] The Debtor argues that dismissal of the case would cause her material harm because the chapter 13 case was used to cure a debt to the Internal Revenue Service.  However, the Debtor did not cite any support for the argument that material harm to the Debtor has any relevance to my decision.

is not obligated to do so.  If the Trustee, either in a Chapter 13 plan, or otherwise, requests a

debtor submit tax returns during the pendency of a chapter 13 case, the Chapter 13 Trustee may,

based on the tax returns, either file a motion to modify, or may request a debtor's counsel to

prepare an amended CMI so the Chapter 13 Trustee may determine whether to file a motion to

modify.  If a debtor declines to do so, then, when the Chapter 13 Trustee files a motion to

modify, the debtor will still have to produce some evidence that modification is not required, so

ultimately preparing an amended CMI may be in the debtor's best interest.

The Debtor's reinstatement was not based on a promise to pay 100% to creditors

The Trustee has asserted the reinstatement should be revoked because the Debtor

promised to file a 100% plan if the case was reinstated.  The Joint Stipulation lists as an

undisputed fact the following:

> 24) On January 5, 2016, the Court heard this matter as the Trustee had noted on
> her calendar that the income issues were not resolved as the debtor had failed to
> file the amended statements of income. The case was reinstated upon the debtor
> attorney representation to the Court that the plan would pay 100% of the allowed
> claims. (Order entered on 1/6/2016)
> (Transcript ECF # 111)

However, neither the transcript nor the order reinstating says any such thing and Debtor's

counsel vehemently disputed this at the trial.  I find that the Debtor's counsel did not make any

such representation and that the failure to file a 100% plan should not be a basis for dismissal or

vacating the order of reinstatement.


There must be consequences for a willful default under the Chapter 13 Plan

The Chapter 13 Plan is a contract between a debtor and his or her creditors.  There is no

question that the Debtor breached the contract by failing to provide the tax returns to the Trustee

in the manner required by the contract.  The Debtor's first argument is that there are no

"damages" because the performance of the contract would not have resulted in an increase of payments to the unsecured creditors. The Debtor also argues it is the Trustee's fault that all of this came up at the end of the five year period – the Trustee should have asked for the missing returns earlier.[16] Thus, the Debtor suggests, there should be no adverse consequences arising from the breach. The Trustee counters that the Debtor acted in bad faith when she amended her schedules after the 60 months had expired and it was too late to do anything.

No doubt it would have been better if the Trustee had advised the Debtor early in the case that she had failed to comply with the 2MP. However, it is not the Trustee's responsibility to make sure the Debtor meets her obligations.[17] In *Boyajian*, 279 F.3d at 91, the debtors argued they were entitled to their discharge because they had made all required payments to the trustee, even though, due to the debtors' failure to pay trust fund taxes, the trustee was unable to make the complete plan payments to the unsecured creditors. The court rejected the debtors' argument noting that the fact that the debtors received notice they had completed their plan payment schedule did not relieve the debtors "of their clear responsibility to comply with the other provisions in the plan . . . ." *Id.* at 93, and, therefore, they would not receive their bankruptcy discharge.

As for damages, unlike a regular contract, the breach of a Chapter 13 plan also involves the integrity of the bankruptcy system. A failure by a debtor or a creditor to abide by that system must carry consequences. Indeed, the provisions of the Bankruptcy Code that outline grounds to deny a debtor his or her discharge reflect Congress' expectation that a debtor in bankruptcy is required to perform his or her obligations as a condition to receiving his or her discharge.

---

[16] I have already addressed these arguments.
[17] *See* n. 10 *supra*.

In the absence of specific provisions of the Bankruptcy Code that set forth consequences for acts that violate the general purposes of the Bankruptcy Code, Congress has given the Bankruptcy Court the general authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Thus, while I will not dismiss this case, or deny the debtor her discharge for breaching the 2MP, I find that, because the Debtor failed to comply with an order of the Court – that is, the Order confirming the 2MP, which Order bound the Debtor to the provisions of the 2MP - the Debtor will be required to pay a sanction to the Clerk of the Bankruptcy Court in the amount of $2,500, or, alternatively, may make a tax deductible donation to the 501(c)(3) entity of her choice in the same amount, which entity provides legal services to the poor in the Southern District of Florida.

It is therefore ORDERED as follows:

1.  The Trustee's Motion to Dismiss is DENIED.

2.  The Debtor is sanctioned for failing to comply with an order of this Court, which can be purged by either paying $2,500 to the Clerk of the Bankruptcy Court within thirty (30) days of the date of this Order, or within the same thirty (30) days making a $2,500 donation to the section 501(c)(3) entity of the Debtor's choice that provides legal services to the poor in the Southern District of Florida.  In either case Debtor shall file a notice of compliance when the payment is made.

3.  The Debtor will have fourteen (14) days from the date of this Order to explain in writing why the Debtor's failure to disclose her husband's income either in schedules or on her CMI should not result in further sanctions including denial of discharge.

# # #

Copies furnished to:
Michael A. Frank, Esq.
Amy Carrington, Esq.

      Attorney Frank shall serve a copy of this order upon all parties in interest and file a certificate of service with the Clerk of Court.